IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No.   03-cv-1310-WDM-CBS

UNITED STATES OF AMERICA,

      Plaintiff(s),

v.

COLORADO MUFFLERS UNLIMITED, INC., et al.,

      Defendant(s).

_____

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
GRANTING PERMANENT INJUNCTION AND OTHER MATTERS**
_____

This matter is before me on the Plaintiff United States of America's complaint for permanent injunction, filed July 21, 2003.  Plaintiff seeks a permanent injunction pursuant to 26 U.S.C. § 7402(a) enjoining the Defendants (and their officers, agents, servants, employees, attorneys, and persons in active concert or participation with them) to withhold and pay over to the Internal Revenue Service certain taxes, deposits; to file required forms; and other requested relief.

On August 10, 2004, and following hearing, I entered an order preliminarily enjoining the Defendants, as well as their officers, shareholders, agents, servants, employees, attorneys and persons in active concert or in participation with them in whatever form they continue to carry on the muffler business, under the name of Colorado Mufflers, Exhaust Pros or any other name, from violating 26 U.S.C. § 3102, 3111, 3301, 3402, 6011 and 6041 until final adjudication of this action.  All were

specifically ordered to withhold and pay various taxes and file designated forms and
perform other tasks, all as more specifically set forth in the order.  All Defendants have
failed to comply with, and are in violation of, that order.

As a consequence Plaintiff moved to hold Defendants in contempt and I ordered
them to show cause why they should not be held in contempt.  Defendants responded
in writing but did not attend the show cause hearing held on June 30, 2005.  By order
dated July 1, 2005, I held the natural person Defendants in contempt and assessed
each a $100 per day fine, commencing July 1, 2005, which would continue until they
complied with my August 10, 2004 order.  A status conference was set for July 29,
2005, and Defendants were ordered to show cause by that date why I should not
initiate criminal contempt proceedings against them.

The Defendants continued to fail to comply with my orders and the scheduled
hearing was held on July 29, 2005.  Following review of all filings and argument,
various orders were entered including an order referring the individual Defendants to
the United States Attorney for the District of Colorado for criminal contempt
proceedings pursuant to Fed. R. Crim. P. 42(a).

As of this date all Defendants have failed to comply with my August 10, 2004
order and the $100 fine against each of the natural person Defendants has continued
to accrue on a daily basis from July 1, 2005, until today.

Trial to the court was held on July 17, 18 and 19, 2006.  The natural person
Defendants appeared *pro se*.  Defendant Colorado Mufflers Unlimited, Inc. did not
appear.  The matter has been fully presented and I make the following findings and

2

conclusions.

Findings of Fact.

1.  The factual findings of my orders, dated August 10, 2004, July 1, 2005, and August 2, 2005, are restated and incorporated herein by reference.

2.  Defendant Colorado Mufflers Unlimited, Inc. has failed to plead or otherwise Defendant and its default was entered on October 15, 2003 (doc. no. 47).

3.  As of this date each Defendant owes a $63,700 fine for contempt of court. (637 days @ $100 from July 1, 2005, until today).

4.  The Defendants have violated my preliminary injunction by failing to (1) withhold and pay when due income, social security, and medicare taxes from employees' wages; (2) pay social security and medicare taxes as they become due; (3) within 30 days of the date of the order, file timely and accurate Forms 940, 941 and W-2 with the Internal Revenue Service (IRS), and send copies to the United States' counsel; (4) make payroll deposits within 3 days of each payroll, and fax a receipt thereof to IRS Agent Beth Nichols; and (5) file accurate Forms 940 and 941 from prior years, starting in 2000.

5.  Colorado Mufflers Unlimited, Inc. ("Colorado Mufflers") was incorporated in 1987.  Since that time, it or its successors have, through its shareholders, officers and employees, operated a business under the trade name of Exhaust Pros.  The business is located at 11450 N. Huron Street, Unit R, Northglenn, Colorado.  It consists primarily of the service, sales, and installation of custom exhaust systems, brakes and mufflers (hereafter referred to as the "Business" regardless of its legal form or entity).

3

6.   At all relevant times, the owners of the Business have been, and continue to be, Richard Rudd, Sr., Sherilyn Gallegos, George Gallegos, III and Richard Rudd, Jr. Ms. Dolores Rudd is an officer and exercises significant control over the ownership structure and operation of the Business.  It was at Ms. Rudd's instigation that the Business ceased withholding and paying over employment taxes.

7.   The natural person Defendants purport to have legally dissolved Colorado Mufflers through a filing with the Colorado Secretary of State on or about August 18, 2004.  There is no evidence, however, to show that proper dissolution procedures were followed.  Colorado Mufflers did not properly wind up its affairs, comply with this Court's orders, or transfer its business to any successors.

8.   As previously found in earlier orders, Defendants have engaged in sham transactions designed to avoid their tax responsibilities.  Earlier efforts included purported corporations and trusts.  The most recent version of their fabrications appears to be that the Business now consists of sole proprietorships engaged in some sort of joint venture.  In fact, the business continues its same operations under the same name of Exhaust Pros at the same location with the same natural person Defendants operating the Business which continues to engage the services of employees to carry out its operations.

9.   For tax periods ending on or before December 31, 1999, the Business timely filed its employment tax returns (Forms 941 and 940) and paid the taxes due.  For these tax periods, the Business also filed Forms W-2 and issued copies to its employees.

4

10.  Although the Business filed Forms 941 for the first and second quarters of 2000, it improperly reported zero wages and taxes due on these returns.

11.  The Business has not filed any Forms 940 for years subsequent to 1999.

12.  The Business has not filed any accurate quarterly Forms 941 for years subsequent to 1999.

13.  The Business has not filed any Forms W-2 or issued them to its employees for years subsequent to 1999.

14.  The Business has not filed any Forms 1099 or issued them to individuals working at the Business for years subsequent to 1999.

15.  On the Forms 941, 940, and W-2 it filed for periods before 1999, the Business treated, among others, the following individuals as employees: Richard D. Rudd, Sr., Richard D. Rudd, Jr., Sherilyn Gallegos, George Gallegos, III, Gary Nielsen, and Sean Turner.

16.  At least some of these individuals, including Sean Turner, Richard D. Rudd, Jr., Sherilyn Gallegos and Michael Gallegos, III, are currently engaged by the Business to perform work that was earlier characterized by the Business as the work of employees.  The Business hires additional employees on an as-needed basis. Moreover, the Business, not individuals associated with it, continues to lease the premises, own or lease the capital equipment on location, establish hours of operation, receive payment from customers and pay its suppliers.

17.  Some, or all, of the individuals who have worked at the Business (or who presently work at the Business) have received (or receive) fixed salaries or hourly

5

wages.  These individuals  have not shared in the ownership of, or, in any substantial manner, the profits of the Business.

18.  The workers for the Business, including the natural person Defendants, understood that prior to 2000, they were employees.  Moreover, at least some of the workers continue to be paid regular or hourly salaries, do not own the major equipment that is used in the business, must work regular hours, work full time for the business, and are subject to termination at will.  They do not advertise for their own clientele, do not pay for supplies out of personal funds, and do not share in costs for rent or utilities.

19.  With the exception of one personal tax return filed in 2005, none of the workers, including the natural person Defendants, have filed personal income tax returns for calendar years 2003, 2004, 2005.  Aside from that one potential exception, none are believed to have paid social security tax, medicare tax or unemployment tax in connection with the Business either through employer withholding or through self-employment withholding during those years.

20.  Many of the customers of the Business are referred on a general basis and are not seeking the services of a particular individual worker at the Business.

21.  Some or all, of the workers have not personally paid (do not pay) for pipe, mufflers or other supplies required for operation of the Business.

22.  The services performed by workers at the Business are integrated into its operations and are not performed on a stand-alone basis.

23.  The Business maintains a checking account in the name of Exhaust Pros. Checks drawn on the Exhaust Pros checking account are either signed by Richard D.

Rudd, Sr. or, alternatively, are "signed" with a stamped version of his signature.

24.  Workers for the Business who are not Defendants have not made any investments in the Business.

25.  The IRS estimates that the Business continues to accrue Forms 941 tax liabilities of over (conservatively) $15,000 per quarter and Form 940 tax liabilities of over $2,000 per year,  with Total liabilities estimated to be at least  $606,030.

<u>Conclusions of Law.</u>

1.  Section 7402(a) provides this court with power necessary to compel compliance with the Internal Revenue Code, including the authority to issue an injunction in the form requested by Plaintiff.  *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984).

2.  There is some uncertainty regarding the standards for issuance of the requested injunctive relief.  Some courts have held that the traditional equitable factors to grant injunctive relief pursuant to Fed. R. Civ. P. 65 apply.   *United States v. Ernst & Whinney*, 735 F.2d at 1301.  Other courts have held that since § 7402(a) sets forth criteria necessary for injunctive relief--enforcement of the Internal Revenue Code–I need not consider the traditional equitable factors.  *See United States v. Stoll*, 2005 WL 1763617 (WD Wash 2005).  The Tenth Circuit has held in similar circumstances that, upon statutory grant of authority to issue injunctions, the traditional equitable factors, including a showing of irreparable harm, need not be proved.  *Atchison, Topeka & Santa Fe R.R. Co. v. Lennen*, 640 F.2d 255 (10th Cir. 1981); *Mical Communications,*

*Inc. v. Sprint Tele Media, Inc.*, 1 F3d 1031 (10th Cir. 1063).

3.  Applying the statutory standard, I conclude that the evidence demonstrates that injunctive relief is necessary to prevent, restrain or terminate the acts of all defendants in violation of the Internal Revenue Code and an injunction should issue. *Id.* at 1035.

4.  For the reasons stated in my August 10, 2004 order granting a preliminary injunction, applying the traditional equitable principles requiring proof of (1) substantial likelihood of success on the merits; (2) irreparable injury to the movant; (3) threatened injury to movant outweighs injury to Defendants; and (4) the injunction is not adverse to the public interest, *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001), even with a closer scrutiny because the injunction would be mandatory, *O Centro v. Ashcroft*, 389 F.3d 973 (2004), the Plaintiff has made a strong showing on all the factors as set forth in my order.  *See* August 10, 2004 order, pp. 10-15.  The passage of time has made those factors weigh even more heavily in favor of the Plaintiff and a permanent injunction should issue.

5.  There is not sufficient evidence to indicate that the corporate entity of Colorado Mufflers Unlimited, Inc. was properly dissolved in accordance with Colo. Rev. Stat. § 7-114-101 *et seq.*  Even if dissolved, the dissolved corporation continues to take such actions as are appropriate "to wind up and liquidate its business and affairs, including: . . . (c) discharging or making provision for discharging its liabilities . . ." Colo. Rev. Stat. 7-114-105(1)(c).  In any case, the dissolution does not abate these proceedings which antedate any dissolution.  Colo. Rev. Stat. § 7-114-105(2)(f).

6.   The Defendants are required to withhold and pay over income, social security tax, and medicare tax from wages paid.  26 U.S.C. §§ 3101, 3102(a), 3402(a) & 7501(a).   The Defendants have violated these requirements for more than five years.

7.   The Defendants are required to pay their own share of social security and medicare taxes. 26 U.S.C. § 3111.  Again, the Defendants have violated these requirements for more than five years.

8.   Generally, employers must deposit employment taxes monthly or semi-weekly.  26 U.S.C. § 6302 & Treas. Reg. § 31.6302-1.  The Defendants have not made any required deposits for more than five years.

9.   Employers are also obligated to file a Form 941 (Employer's Quarterly Federal Tax Return) to report these taxes every quarter of the year.  26 U.S.C. § 6011(a) & Treas. Reg. (26 C.F.R.) §§ 31.6011(a)-1 & 31.6011(a)-4 (requiring Form 941 to report withheld FICA and income taxes every quarter); 26 U.S.C. 6071(a) & Treas. Reg. § 31.6071(a)-1 (setting forth the time for filing).  The Defendants have not filed accurate Forms 941 for more than five years.

10.   In addition, employers are required to pay Federal Unemployment Tax Act, or "FUTA," taxes.  26 U.S.C. § 3301.  They must file a Form 940 (Employer's Annual Federal Unemployment Tax Return) to report these taxes every year.  26 U.S.C. §§ 6011(a) & Treas. Reg. § 31.6011(a)-3 (requiring Form 940 to report FUTA taxes every year); 26 U.S.C. § 6071(a) & Treas. Reg. § 31.6071(a)-1 (setting forth the time for filing).  The Defendants have not paid FUTA taxes nor filed accurate Forms 940 for more than five years.

11.   Every year, employers must file separate Forms W-2 (Wage and Tax Statements) with the IRS to report the total wages paid to, and the taxes withheld for, each employee; they must also issue to each employee a copy of his or her form.  26 U.S.C. § 6041 & Treas. Reg. § 1.6041-2 (requiring Forms W-2).  The Defendants have not met this obligation for more than five years.

12. The Internal Revenue Code defines the term "employee" in connection with social security, medicare and unemployment tax withholding.  *See Eastern Investment Corp. v. United States*, 49 F.3d 651, 653 (10th Cir. 1995) (referring to 26 U.S.C. §§ 3121(d), 3306(i), 3401(c)) .  Federal regulations provide a summary of the principles of common law utilized for determining if an employee/employer relationship exists. *United States v. W. M. Webb*, *Inc.*,  397 U.S. 179, 194 (1970); *see* 26 U.S.C. § 31.3121(d)-1(c).  The Internal Revenue Service has developed a 20-factor test to aid this determination.  *See* Rev. Ruling 87-41, 1987 WL 419174.  No one factor is dispositive; it is the totality of the factors that controls.  *See Eastern Investment*, 49 F.3d at 653.  Where the question is a close one, it should be resolved by finding that an employment relationship exists.  *See Breaux & Daigle, Inc. v. United States*, 900 F.2d 49, 52 (5th Cir. 1990) (citation omitted).  In Rev. Ruling 55-370, 1955 WL 9602, the IRS rejected an effort to reclassify an auto repair employee as an independent contractor where he did the same job as previously, worked regular hours, and, among other factors, did not own the capital equipment needed to perform his work.

13. In this case, there is little question that the workers for the Business understood that prior to 2000, they were employees.  Moreover, at least some of the

10

individuals continue to paid regular or hourly salaries, do not own the major equipment that is used in the business, must work regular hours, work full time for the business, and are subject to termination at will.  They do not advertise for their own clientele, do not pay for supplies out of personal funds, and do not share in costs for rent or utilities. Tellingly, they are not receiving Form 1099s, reporting income earned at the Business, or paying over social security, medicare and unemployment taxes either through the business or individually.  Therefore the Business has continued to have employees from prior to 2000 until the present time.

Accordingly, it is hereby ordered:

1.  Colorado Mufflers, any successor-in-interest, the Business (as defined above), and the natural person Defendants are permanently enjoined from violating I.R.C. §§ 3102, 3111, 3301, 3402, 6011, 6041.

2.  This permanent injunction binds Colorado Muffler, any successor-in-interest, the Business (as defined above), as well as the officers, owners, shareholders, agents, servants, employees, attorneys of Colorado Mufflers or the Business,  and persons in active concert or participation with them, including defendants Richard D. Rudd, Sr., Dolores Rudd, Sherilyn Gallegos, Richard D. Rudd, Jr., and George Gallegos, III, in whatever form they continue to carry on the Business, under name of Colorado Mufflers, Exhaust Pros, or any other.

3.  Defendants shall withhold income, Social Security, and Medicare taxes from its employees' wages as and when wages are paid and pay these taxes to the Internal Revenue Service as they become due.

11

4.  Defendants shall pay Social Security and Medicare taxes as they become due.

5.  Defendants shall file timely and accurate Forms 941 and 940 and Forms W-2 with the Internal Revenue Service as they become due.  They must also file the Forms W-2 with the Social Security Administration and issue them to the employees of the Business.  They must also send copies all of these forms to counsel for the United States at the same time that they file the originals.

6.  Effectively immediately, within three days of each payroll, the Defendants shall make payroll tax deposits with their bank and send by fax to IRS Revenue Agent Beth S. Nichols at (303) 231-5265 a receipt for each employment tax deposit and a completed worksheet in the form attached hereto.

7.  Within thirty days from the entry of this permanent injunction, the defendants must file accurate Forms 941 for the Business, beginning with the one for the first quarter of 2000, and Forms 940, beginning with the one for 2000.

8.  Within thirty days from the entry of this permanent injunction, the Business must file with the Social Security Administration and issue to its employees accurate Forms W-2 beginning with the ones for 2000.  The Business must send copies of these Forms W-2 to counsel for the United States at the same time that it files the originals.

9.  Within ten days from the entry of this permanent injunction, the Business must deliver to all of its current employees, and any former employees employed at any time since January 1, 2000, a copy of this Court's findings and permanent injunction. The Defendants shall bear all expenses associated with the copying and mailing.

Within twelve days of the entry of this permanent injunction, an officer of Colorado

Mufflers must file a sworn certificate of compliance, swearing that he or she has

complied with this portion of the Order.

10.   Judgment shall enter in the amount of $63,700 against each of the natural

person Defendants, namely, Richard Rudd, Sr., Sherilyn Gallegos, George Gallegos, III

and Richard Rudd, Jr., Dolores Rudd, together with interest according to law.  Said

judgments shall be paid to the registry of this court.

11.   Plaintiff may have its costs.

DATED at Denver, Colorado, on March 30, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge